IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| HAROLD METZLER, | § | |
| | § | |
| Appellant, | § | |
| | § | |
| v. | § | Civil Action No. 4:19-cv-00790-P |
| | § | |
| ENERGY & EXPLORATION PARTNERS, INC., | § | |
| | § | |
| Appellee. | § | |

## MEMORANDUM OPINION AND ORDER

This is an appeal from an adversary proceeding brought in a Chapter 11 bankruptcy matter jointly consolidated into Case Number 15-44931. *See In re Energy & Exploration Partners, Inc. et al.*, Case No. 15-44931-elm11 (Bankr. N.D. Tex.).[1] Before the Court is Appellant Harold Metzler's ("Metzler") Brief (ECF No. 11) and Appellee Energy & Exploration Partners, LLC's ("ENXP") Brief in Response (ECF No. 14).[2]

---

[1] All references to the docket entries on this appeal will be "ECF No. __." All references to the bankruptcy record will be "R. at __," which refers to the consecutively paginated record designated by the parties and found at ECF Nos. 4-1 through 4-5, 15-1 through 15-3, and 4-9 through 4-11. The Court notes that a clerical error resulted in the omission of the bates numbers from ECF Nos. 4-6 through 4-8, which required the filing of Amended Volumes 4, 5, and 6 as ECF Nos. 15-1 through 15-3.

[2] Bankruptcy Case Number 15-44931 was filed by Energy & Exploration Partners, Inc. ("ENXP Inc."), a former affiliate of ENXP. However, the dispute underlying this appeal stems from an agreement between Metzler and ENXP. ENXP's related bankruptcy case was closed on November 21, 2018, and the only bankruptcy case that remained open at the time this appeal was filed was the main case against ENXP Inc. *See* R. at 721. ENXP Inc. was dissolved in accordance with its confirmed chapter 11 plan and no longer exists. R. at 460–61. Thus, the correct Appellee is ENXP.

Having considered the briefing and applicable law and having reviewed the bankruptcy record, the Court concludes that the Bankruptcy Court did not abuse its discretion by disallowing and expunging Claim No. 536 in its entirety. Therefore, the Court **AFFIRMS** the Bankruptcy Court's September 25, 2019 Order granting ENXP's Objection to Claim No. 536.

## JURISDICTION

"A federal district court has jurisdiction to hear appeals—and an aggrieved litigant may appeal as of right—from the 'final judgments, orders, and decrees' of a bankruptcy court." *Phillips v. Travelers Cas. & Sur. Co. of Am.*, 2012 WL 3779294, at *1 (S.D. Tex. Aug. 30, 2012) (quoting 28 U.S.C. § 158(a)(1)). "Pursuant to 28 U.S.C. § 1134(b), the Court has jurisdiction over the underlying adversary proceeding because it arose in a case brought under Title 11." *Anarkali Enterprises, Inc. v. BP Chaney, LLC*, 2019 WL 5537241, at *1 (N.D. Tex. Oct. 25, 2019); *see also* FED. R. BANKR. P. 8001(a).

## BACKGROUND

Metzler owns approximately 262 acres of land in Houston County, Texas that has been subject to two oil and gas leases since the 1950s. R. at 499–500. When Metzler bought the land, he acquired a small fraction of the mineral interest. *Id*. By 2014, the leases were between Metzler and Treadstone Energy Partners, LLC ("Treadstone"). *Id*. Treadstone filed suit against Metzler in Texas state court on April 15, 2014, alleging that Metzler had wrongfully prevented Treadstone from accessing Metzler's surface estate to conduct oil and gas drilling operations. R. at 873. While litigating that dispute, Metzler and Treadstone entered into a Surface Use Agreement (the "SUA") that governed

Treadstone's use of the surface for oil and gas production activities. R. at 2176–88. Treadstone later sold the leases and all its interests in the SUA to ENXP, which succeeded to Treadstone's rights and obligations under the SUA. R. at 496, 532–95. As successor in interest to the SUA, ENXP was required to conduct certain maintenance of the surface, including removing and stacking the first eight inches of topsoil at the padsites, leveling the padsites, burying trees, cleaning up pit spills, repairing pit ruptures, and fly ashing activities. R. at 2115–16. Metzler ultimately answered the Texas suit and filed counterclaims in 2015, asserting claims against Treadstone and ENXP for alleged violations of the SUA. R. at 873, 908–925. As a part of his counterclaim against ENXP, Metzler requested that ENXP clean up the padsites and remove all oil and gas waste, materials and debris. R. at 908–925, 2118–19.

On December 7, 2015, ENXP and certain affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which were jointly consolidated into bankruptcy case number 15-44931. R. at 6. The Texas suit was therefore stayed under 11 U.S.C. § 362. R. at 874. On February 8, 2016, the Bankruptcy Court entered an order establishing the bar date of March 14, 2016 (the "General Bar Date") for filing claims in the case. R. at 279. The General Bar Date applied to "all types of claims against the Debtors that arose prior to the Petition Date, including secured claims, unsecured priority claims . . . and unsecured nonpriority claims." *Id*.

On the General Bar Date, Metzler timely filed his proof of claim number 350 ("Claim No. 350") against ENXP. R. at 2107–11. Claim No. 350 was an unsecured, nonpriority prepetition claim in the amount of $407,061.28. R. at 2108. Attached to Claim

3

No. 350 was an itemized statement describing damages in connection with the Texas suit for purported breaches of the SUA, including: (i) 30,000 cubic yards of topsoil; (ii) level padsites; (iii) fly ashing; (iv) pit leak; (v) removal of buried trees; (vi) notice to cure provision; (vii) clay/additional clay; and (viii) 2 dead cows. R. at 2110–11.

On April 25, 2016, ENXP filed its Third Amended Joint Plan of Reorganization in the bankruptcy proceeding, which among other things, purported to assume all executory contracts and unexpired leases that were not expressly rejected pursuant to 11 U.S.C. § 365. R. at 288, 471. The executory contracts to be rejected were specified in a schedule of rejected contracts in the plan supplement. R. at 471. On April 26, 2016, the Bankruptcy Court entered its order confirming the Third Amended Joint Plan ("Confirmation Order"). R. at 357–421, 423–91. Paragraph 71 of the Confirmation Order addressed the SUA and "reserved and preserved all rights with respect to the [SUA] and oil and gas lease." R. at 414–15. The language in the Confirmation Order reflected the parties' mutually agreed reservation of rights for Metzler and ENXP to determine, after confirmation, "whether the surface use agreement and the oil and gas lease between the parties are integrated transactions," while reserving Metzler's right to "object to the Debtors' rejection of the surface use agreement under section 365 of the Bankruptcy Code." *Id.*

The Confirmation Order set deadlines for asserting claims. R. at 357. The deadline for filing administrative priority claims was 30 days after the effective date, which occurred on June 13, 2016 (the "Administrative Bar Date"). *See* R. at 397, 492–93, 2096. The Confirmation Order also stated that all proofs of claim filed after the applicable bar date were automatically disallowed. R. at 396, 2096. Like the Bankruptcy Court's prior order

setting the General Bar Date for filing claims, the Confirmation Order contains language emphasizing that holders of administrative priority claims who failed to timely file proofs of claim were "forever barred from doing so." R. at 397, 493.  In addition, the plan and Confirmation Order contain discharge and injunction provisions that generally prohibited actions against ENXP for claims that existed prior to the plan's effective date. R. at 398–404.  The Confirmation Order discharged ENXP from any debts that arose prior to the effective date, pursuant to 11 U.S.C. §§ 524 and 1141(d). R. at 407–09.  Likewise, the Confirmation Order contains a provision that enjoins subsequent actions against ENXP to collect a discharged debt. R. at 401–02.  Both the plan and Confirmation Order are binding upon "all present and former Holders of Claims against or Interests in Debtors, together with their respective successors and assigns, whether or not the Claims or Interests of such Holders are impaired under the Plan and whether or not such Holders, as applicable, have accepted the Plan." R. at 378.

On July 9, 2019, Metzler filed claim number 536 ("Claim No. 536") as a purported amendment to Claim No. 350. *See* R. at 716, 2150.  Claim No. 536 sought to amend Claim No. 350 in two significant ways.  First, while Claim No. 350 was originally asserted as a collection of unsecured, nonpriority claims for damages under the SUA, Claim No. 536 asserted secured and administrative priority claims. *Id.*  Second, Claim No. 536 expanded the damages from $407,061.28 to $2,530,439.04. *Id.*  The substantially increased damage calculation stemmed from Metzler's recharacterization of fly ashing activities as a $2.1 million post-petition administrative expense, as opposed to his initial prepetition claim for $20,000 as itemized on Claim No. 350. *Compare* R. at 2110–11 *with* R. at 2156.  Metzler

5

argues that the increased amount of the damages was based on an environmental study that was undertaken for the remediation of the land on April 3, 2017, which "could not have been included at the time of the filing of the original Claim." Appellant's Brief, p. 9 (citing R. at 2196–97).

On August 26, 2019, ENXP filed an objection to Claim No. 536 as a new, late-filed claim. R. at 719. At a hearing on the objection, the Bankruptcy Court granted ENXP's objection to Claim No. 536 and ruled that it constituted a new claim filed after the applicable bar dates, and was therefore time-barred under the order setting the General Bar Date, the deadlines prescribed in the confirmed plan and Confirmation Order, and 11 U.S.C. § 502(b)(9). R. at 2100–01. Accordingly, on September 26, 2019, the Bankruptcy Court entered an order disallowing and expunging Claim No. 536 in its entirety. R. at 3–5.

On October 2, 2019, Harold Metzler filed this appeal seeking relief from the Order disallowing and expunging his Amended Claim. *See* ECF No. 1. The notice of appeal was transferred to this Court on October 3, 2019. On December 18, 2019, Metzler filed his Unopposed Motion and Memorandum in Support of an Extension to File Brief, which the Court granted on December 19, 2020. ECF Nos. 8 and 10. Metzler timely filed his brief on appeal, and ENXP timely filed its responsive brief. ECF Nos. 11 and 14. This appeal is now ripe for review.

**ISSUES ON APPEAL**

1. Was Claim No. 536 a new claim filed impermissibly late or did it relate back to Metzler's timely filed Claim No. 350?

2. Did the reservation-of-rights language in paragraph 71 of the Confirmation Order exempt Metzler from the deadlines for asserting new claims related to the SUA?

**LEGAL STANDARD**

When a district court reviews a bankruptcy court's decision, it functions as an appellate court and utilizes the same standard of review generally applied by a federal court of appeals. *See In re Webb*, 954 F.2d 1102, 1104 (5th Cir. 1992). The Court reviews conclusions of law de novo. *In re Coutee*, 984 F.2d 138, 140 (5th Cir. 1993); *In re Young*, 995 F.2d 547, 548 (5th Cir. 1993). The district court reviews findings of fact under a clearly erroneous standard. *Young*, 995 F.2d at 548. Under this standard, the Court will reverse findings of fact only if based on the entire evidence, the Court is left "with the definite and firm conviction that a mistake has been made." *Id.*

**ANALYSIS**

**A.     Claim No. 536 was a new claim filed after the General Bar Date.**

As a general rule, the Bankruptcy Code disallows claims that are not timely filed. *See* 11 U.S.C. § 502(b)(9). However, "courts generally recognize the right of a creditor to file an amended claim." *In re Breaux*, 410 B.R. 236, 238 (Bankr. W.D. La. 2009) (citing *Highlands Ins. Co. v. All. Operating Corp. (In re Alliance Operating Corp.)*, 60 F.3d 1174, 1175 (5th Cir. 1995) and *In re Delmonte*, 237 B.R. 132, 135–36 (Bankr. E.D. Tex. 1999)). The guiding principle at the center of this apparent conflict is that "[b]ar dates . . . are not

7

to be vitiated by amendments, and the courts must ensure that the amendments do not introduce wholly new grounds of liability." *Alliance Operating Corp.*. 60 F.3d at 1175. "[T]he one key factor behind allowing amendments is that the bankruptcy court already have notice of the existence, nature, and amount of the claim from the filing of the original claim." *Id.* at 1176 (citing *In re Int'l Horizons, Inc.*, 751 F.2d 1213, 1216–17 (11th Cir. 1985)).

"Amendments to proofs of claim that change the nature of the claim from an unsecured status to a priority status set forth a new claim." *Id.* (citing *In re Metro Transp. Co.*, 117 B.R. 143, 148 (Bankr. E.D. Pa. 1990)); *see also In re Dynamic Tours & Transp., Inc.*, 349 B.R. 307, 316 (Bankr. M.D. Fla. 2006) (holding that a creditor's attempt to convert an unsecured non-priority claim into an administrative priority claim after the applicable bar date impermissibly alleged a new claim); *In re Nat'l Merch. Co.*, 206 B.R. 993, 999 (Bankr. M.D. Fla. 1997) ("changing an unsecured claim to a secured claim equates to filing a new claim"). Courts treat the enhancement of a claim's priority status as a new claim because the "nature of a priority claim is much different from that of a general unsecured claim," and "[r]eclassifying the claim as a priority claim impacts the Debtor's Plan and the distributions to be paid to other creditors under the plan." *Id.* at 1175–76 (internal quotation marks omitted); *see also* 11 U.S.C. § 1129(a)(9). As the court in *Metro Transp. Co.* reasoned, "[t]his situation is . . . different from those in which amendments have been permitted to increase the amount of a claim when post-bar date events have resulted in a larger, but otherwise unchanged debt." 117 B.R. at 148. In other words, enhancing a claim from unsecured to secured after the bar date is not allowed

8

because "enhancing the priority of a claim previously classified in the general unsecured class makes fewer assets available to pay general unsecured obligations." *Id.*

In the present case, Metzler asserted Claim No. 350 prior to the General Bar Date as unsecured, nonpriority claims. R. at 2150–51. Over three years after the General Bar Date, Metzler filed Claim No. 536 in an attempt to enhance the claims listed in Claim No. 350 to secured and administrative priority claims. However, Claim No. 536 impermissibly "change[d] the nature of the claim." *Id.* Claim No. 350 did not indicate that Metzler would one day assert a secured or administrative priority claim, and it did not disclose a security interest in property or reserve his rights to elevate the priority of his claim. R. at 2107–11. Consequently, Claim No. 536 cannot be considered a proper amendment to Claim No. 350.

Metzler argues that Claim No. 536 is like the amended claim in *Breaux*, where the court permitted a creditor to amend its claim from a secured claim to an unsecured claim after the bar date. *Breaux*, 410 B.R. at 239. Metzler's reliance on *Breaux* is misplaced. In *Breaux*, the court reasoned that a post-bar deficiency claim was "grounded on the same facts and transactions reflected in the original proof of claim," and therefore "relate[d] back to the timely-filed original claim." *Id.* However, unlike the present case, *Breaux* did not deal with an amended claim which sought to enhance the priority of a timely filed claim. *Id.* at 238–240. Indeed, the court in *Breaux* distinguished *Alliance,* noting that the *Alliance* court "rejected the amended proof of claim on the grounds that an amendment that changes 'the nature of the claim from an unsecured status to a priority status [s]ets forth a new claim.'" *Id.* at 240 (quoting *Alliance Operating Corp.*, 60 F.3d at 1175); *see also Dynamic Tours & Transp., Inc.*, 349 B.R. at 316 ("The nexus test is not relevant to this matter. [The

9

claimant] is not seeking to amend [its timely filed claim] through its [late-filed claim]. [The claimant] is attempting to convert the discharged unsecured nonpriority debt . . . into an administrative priority claim.  It is seeking to assert an entirely new claim.").

In short, because Claim No. 536 attempted to enhance the priority of the claims previously asserted in Claim No. 350, Claim No. 536 must be treated as a new claim filed after the applicable bar dates.

> **B.**     **The reservation-of-rights language in Paragraph 71 did not exempt Metzler from the deadlines for asserting new claims related to the SUA.**

Chapter 11 plans and confirmation orders are interpreted like contracts.  *See, e.g., In re SkyPort Glob. Commc'ns, Inc.*, 2011 WL 111427, at *18 (Bankr. S.D. Tex. Jan. 13, 2011) (citing *In re Tex. Pig Stands, Inc.*, 610 F.3d 937, 943 (5th Cir. 2010)).  Accordingly, they are "to be read as a whole, and an interpretation that gives effect to every part of the agreement is favored so that no provision is rendered meaningless or as surplusage."  *Id*. (quoting *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 235 (Tex. 2003)).

Metzler argues that the broad language in Paragraph 71 of the Confirmation Order "reserving and preserving" the parties' rights with respect to the SUA "is considerabl[y] broad and should not be limited to preclude Metzler's ability to raise, change, or modify his claims with respect to the SUA . . . ."  Appellant's Br. at 13–14.  The Court agrees with the Bankruptcy Court that the language in Paragraph 71 is not as broad as urged by Metzler. *See* R. at 2079–81, 2096–97, 2102.  By its plain terms, Paragraph 71 did not authorize Metzler to file new claims after the applicable bar dates.  As the Bankruptcy Court correctly explained, Paragraph 71 only reserved and preserved the parties' "respective rights to argue

about whether and to what extent that putative real property interest exists and/or secures any rights to payment under the [SUA]." R. at 2102. Generally, reservations of rights do "no more than reserve whatever rights the parties already had." *In re Preferred Prop. Grp., LLC*, 2015 WL 1543193, at *11 (Bankr. C.D. Ill. Mar. 31, 2015); *see also, e.g., In re Analytica Wire, Inc.*, 392 B.R. 618, 622 (Bankr. D. Del. 2008) ("[A]n express reservation of rights only serves to protect those rights that exist, whatever they may be. It cannot unilaterally create a right."). Accordingly, the language in Paragraph 71 did not "create a perpetual opportunity for [Metzler] to revise [his] claims." *See Dynamic Tours & Transp., Inc.*, 349 B.R. at 312.

Moreover, Metzler's reading of Paragraph 71 would "render[] meaningless or as surplusage" other provisions of the Confirmation Order. *See SkyPort Glob. Commc'ns, Inc.*, 2011 WL 111427, at *18. Specifically, Paragraph 39 provides that "[a]ll proofs of claim that were filed after the applicable [b]ar [d]ate will automatically be treated as [d]isallowed without the need for any further order of the Bankruptcy Court." R. at 396. Likewise, Paragraph 40 "forever barred" claimants from asserting administrative expense claims if they failed to submit proofs of claim "on or before the Administrative Claims Bar Date." R. at 397. As the Bankruptcy Court noted, none of the provisions in the Confirmation Order purport to exempt Metzler from the applicable bar dates. *See* R. at 2079–81, 2096–97, 2102.

Therefore, the Court concludes that the Bankruptcy Court did not err by finding that Claim No. 536 should be treated as a new claim, that Claim No. 536 was time-barred as impermissibly filed after the applicable bar dates, and that the language in Paragraph 71 of

the Confirmation Order did not did not exempt Metzler from the deadlines for asserting the new claim.

## CONCLUSION

Based on the foregoing, the Court **AFFIRMS** the Bankruptcy Court's September 25, 2019 Order granting ENXP's Objection to Claim No. 536 and disallowing and expunging Claim No. 536 in its entirety.

**SO ORDERED** on this **6th** day of **July**, **2020**.

Mark T. Pittman
UNITED STATES DISTRICT JUDGE